Manchester School v. Kimberli M.    CV-97-632-M   03/04/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


The City of Manchester
School District,
     Plaintiff

v.                                          Civil No. 97-632-M

Kimberli M., through her
surrogate parent, Margaret Crisman,
and The Pittsfield School District,
     Defendants


**O R D E R**

Since 1989, the City of Manchester School District ("MSD") has funded the special education provided to Kimberli M., an educationally disabled student who attends school in Pittsfield, New Hampshire.  Pointing to several "changed circumstances" relative to Kimberli's family situation and her legal residence, MSD asserts that, under New Hampshire law and the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, it is no longer obligated to provide her with a free appropriate public education.  MSD's assertions were rejected by a state hearing officer and this appeal followed.


**Factual Background**

The relevant facts underlying MSD's claims are largely undisputed.  See Joint Statement of Material Facts (document no. 28).  Kimberli was born in Colorado on September 5, 1988.

Neither of her parents has ever been a domiciliary of New Hampshire. In January of 1989, while Kimberli's parents were visiting friends in Manchester, New Hampshire, Kimberli was involved in an accident (the details of which are unclear), leaving her with substantial developmental disabilities and cortical blindness. She was treated at hospitals in Manchester and Boston. While she was hospitalized, Kimberli's parents stayed with friends in Manchester and, upon her release, they voluntarily placed her in the Brock Home in Pittsfield, New Hampshire, a facility licensed by the New Hampshire Department of Mental Health to provide the care required. Shortly thereafter, Kimberli's parents left New Hampshire. They had little, if any, contact with Kimberli for several years.

In 1992, the agency responsible for the residential aspect of Kimberli's placement requested a "district of liability" determination from the New Hampshire Department of Education (the "NHDOE"). Notwithstanding the fact that neither of Kimberli's parents was resident in Manchester (or even New Hampshire), the NHDOE determined that MSD was the district of liability under applicable law and, therefore, responsible for funding Kimberli's educational expenses. MSD appealed that finding to the New Hampshire Commissioner of Education, who affirmed MSD's liability. MSD took no further appeal of that decision and it became final.

2

In February of 1993, Kimberli and representatives of the Brock Home traveled to Akron, Ohio for four days. It appears that Kimberli's parents decided to relocate her to the Hattie Larlham Foundation, a 128 bed children's nursing home in Ohio. Subsequently, however, they changed their minds and Kimberli was returned to the Brock Home. Nevertheless, MSD viewed the trip as having had the legal effect of changing Kimberli's residence from New Hampshire to Ohio, based on its view that Kimberli's parents intended to place her in the Hattie Larlham Foundation and Kimberli was physically taken to, and spent more than one night in, Ohio with the intent to establish residence there. The NHDOE disagreed and informed MSD that it remained the district of liability.

In March of 1993, James M., Kimberli's father, left his marital residence in South Carolina and returned to Ohio. MSD thereupon renewed its assertion that Kimberli's trip to Ohio had the legal effect of changing her residence and, therefore, relieved MSD of its educational funding obligations. Again, however, the NHDOE disagreed and informed MSD that if it did not continue to honor those obligations, the NHDOE would provide special education to Kimberli and deduct payment from MSD's IDEA funds.

In June of 1993, the NHDOE appointed Margaret Crisman to act as Kimberli's educational surrogate parent. Ms. Crisman was

3

charged with representing Kimberli's educational interests and insuring that she received a free appropriate public education. Nevertheless, despite their lack of contact with Kimberli, and residence in another state, Kimberli's parents retained legal custody of her.

Approximately two years later, in March of 1995, Kimberli's parents were divorced. Her father, then a resident of Akron, Ohio, was awarded sole legal custody of Kimberli. Two months later, after learning of the divorce, MSD "discharged" Kimberli from its educational responsibility, claiming that the Akron Ohio School District had become the district legally obligated to fund Kimberli's public educational expenses.[1] Crisman objected to the discharge and requested a hearing, which MSD filed with the NHDOE on June 28, 1996. See Hearing Officer's Order, dated September 29, 1997, at 3-4 n. 3.

The hearing officer ruled that MSD was precluded from relitigating the question of Kimberli's residence prior to the

---

[1] MSD represents that the Akron Ohio Public Schools System has acknowledged its potential liability for Kimberli's educational expenses and has agreed to evaluate her, so that it might identify her precise needs. Kimberli's father has, however, refused to cooperate with the Ohio Department of Education. He has elected not to participate in proceedings related to Kimberli's education currently pending before the Ohio Department of Education and refused to meet with Akron's legal counsel to discuss Akron's potential responsibility for insuring that Kimberli receives a free appropriate public education. See Order dated October 29, 1998, by Ohio Department of Education Administrative Hearing Officer Anne Piero Silagy.

4

NHDOE's 1992 determination that MSD was the district of liability. She did, however, permit MSD to argue that there had been a material change in circumstances since that determination, warranting reconsideration of its current legal obligations to Kimberli. Nevertheless, the hearing officer concluded that the applicable statute of limitations barred consideration of Kimberli's four day trip to Ohio in 1993 as evidencing a change in her legal residence. She also concluded that Kimberli's parents' divorce in 1995 (and the fact that Kimberli's father was granted legal custody) did not have the effect of changing Kimberli's legal residence (at least for IDEA purposes) to Ohio. In the end, the hearing officer held that, although the NHDOE's 1992 district of liability determination was, at best, questionable under current law, it remained binding upon MSD.

MSD filed a timely motion for reconsideration. After considering the parties' arguments, the hearing officer declined to modify her previous order. MSD then filed a timely appeal in this court. Pending before the court are motions for summary judgment filed by MSD and Kimberli M.

## Standard of Review

A parent who is dissatisfied with "any matter relating to the identification, evaluation, or educational placement of [his or her] child, or the provision of a free appropriate education" may challenge it by demanding an impartial due process hearing

5

before the state educational agency.  20 U.S.C. § 1415(b)(1)(E) and (2).  Any party aggrieved by the decision of the hearing officer may ask for further review in a federal district court. 20 U.S.C. § 1415(e)(2).  The district court will review the administrative record, hear additional evidence if requested by a party, and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  Id.  The court of appeals for this circuit has described the applicable standard of review in these cases as an "intermediate" one.

> [T]he [IDEA] contemplates an intermediate standard of review on the trial-court level -- a standard which, because it is characterized by independence of judgment, requires a more critical appraisal of the agency determination than clear-error review entails, but which, nevertheless, falls well short of complete de novo review. . . .  In the end, the judicial function at the trial-court level is 'one of involved oversight' and in the course of that oversight, the persuasiveness of a particular administrative finding, or the lack thereof, is likely to tell the tale.

Lenn v. Portland School Committee, 998 F.2d 1083, 1086-87 (1st Cir. 1993).

## Discussion

Put simply, the core dispute between the parties is whether MSD has a continuing obligation to finance Kimberli's special education.  However, the context in which that issue is presented creates certain difficulties.  Of the issues raised before the administrative hearing officer, none appears to have been

6

resolved incorrectly under then applicable law (for the reasons discussed below, however, the court has not scrutinized the hearing officer's legal reasoning in detail). Nevertheless, MSD argues that a change in New Hampshire law, effective after the hearing officer's decision (and, therefore, neither raised before the hearing officer nor addressed in her decision), makes it clear that MSD is no longer legally obligated to pay for Kimberli's special education.

As of January 1, 1998, circumstances affecting MSD's continuing obligation to finance Kimberli's special education appear to have changed. On that date, section 193:12 of New Hampshire's Revised Statutes Annotated became effective, providing that:

I. Notwithstanding any other provision of law, no person shall attend school, or send a pupil to the school, in any district of which the pupil is not a legal resident, without the consent of the district or of the school board except as otherwise provided in this section.

II. For purposes of this section, the legal residence of a pupil shall be as follows:

(a) In the case of a minor, legal residence is where his or her parents reside, except that . . . in a divorce decree where parents are awarded joint legal custody the legal residence of a minor child is the residence of the parent with whom the child resides. If a parent is awarded sole or primary physical custody by a court of competent jurisdiction in this or any other state, legal residence of a minor child is the residence of the parent who has sole or primary physical custody. If the parent with sole or primary physical custody lives

7

> **outside the state of New Hampshire, the pupil**
> **does not have residence in New Hampshire.**

N.H. Rev. Stat. Ann. ("RSA") 193:12 (emphasis supplied).  Thus, it would appear that the combination of the 1995 divorce decree (which declared Kimberli's father her "residential parent and legal custodian") and the 1998 amendments to RSA 193:12, effectively changed Kimberli's legal residence — she is no longer a resident of New Hampshire (at least for the purposes of her special education), and is likely legally resident in Ohio. Accordingly, it would appear that MSD no longer is legally obligated to underwrite her public education.[2]

While the amendments to RSA 193:12 likely resolve the parties' dispute, that issue was not presented to the hearing officer and she did not consider or rule upon it.  Consequently, the most appropriate course of action for the court is to remand this matter to the hearing officer for further consideration.  Of

---

[2]     Crisman asserts that applying the 1998 amendments to RSA 193:12 to this case would violate the Equal Protection Clause of the United States Constitution, or constitute an unlawful retrospective application of law.  Those arguments would seem to have little merit.  Under prior New Hampshire law, Kimberli acquired no vested prospective right to a continuing education in Pittsfield, New Hampshire, nor did she acquire a vested right to have MSD fund her special educational needs.  Rather, she has had and retains a federally protected right to a free appropriate public education.  MSD does not seek to abridge that right. Instead, it merely seeks relief from its legal obligation to fund that public education, on grounds that Kimberli is no longer legally resident in New Hampshire, and that the State of Ohio, where she is legally resident, is now responsible for ensuring that she receives her educational entitlement.  At this juncture, it appears that Ohio, New Hampshire, and federal law all support that view.

8

course, if the parties can agree that MSD is no longer legally obligated to fund Kimberli's special education, the proceedings need go no further.[3]  However, if Kimberli's surrogate parent, Ms. Crisman, continues to assert that MSD is legally obligated to finance Kimberli's special education, notwithstanding the recent amendments to RSA Ch. 193, that position should be presented to and resolved by the hearing officer in the first instance.

## Conclusion

For the foregoing reasons, Kimberli M.'s motion for summary judgment (document no. 10) is denied.  Likewise, MSD's motion for summary judgment (document no. 16) is denied.  The matter is remanded to the administrative hearing officer for further proceedings aimed at resolving the following specific issue: whether the 1998 amendments to RSA 193:12 (in conjunction with the 1995 divorce decree) operated to effectuate a "change in circumstances" (i.e., changed legal residence of a minor child), rendering Kimberli M. no longer legally resident in New Hampshire for educational purposes and, therefore, relieving MSD of any future obligation to fund her special education (i.e., thereby justifying MSD's decision to prospectively discharge Kimberli from its educational responsibility).

---

[3]  It is, perhaps, important to note that MSD is not seeking reimbursement for funds it previously expended on Kimberli's special education.  Thus, it does not directly challenge the NHDOE's 1992 district of liability determination.  Instead, MSD is simply seeking a declaration that it is not responsible for Kimberli's future educational expenses.

9

Of course, subsumed within that issue is the following: whether the hearing officer may properly determine that MSD is no longer financially responsible for Kimberli's special education or whether that issue must again be presented (at least initially) to the NHDOE. Implicit in the series of orders issued by the hearing officer is the underlying conclusion that she could, if circumstances warranted, uphold MSD's decision to disclaim any future financial obligations to Kimberli (and, in essence, rule that the 1992 determination was no longer binding on MSD). That was, after all, the core issue presented to her.

To be sure, the hearing officer concluded that she could not revisit the propriety of the NHDOE's original 1992 determination: "As I have indicated previously, I have serious questions about the Department's original [1992] DOL determination. Nonetheless, the time for challenging that determination has passed and, in my opinion, the statute of limitations further bars consideration of events occurring in 1993." Order dated August 21, 1997, at 7. While the hearing officer's conclusion that MSD may no longer challenge the 1992 district of liability decision (and, therefore, may be barred from seeking reimbursement for expenses previously incurred as a result of that determination) is likely correct, the question remains whether MSD is bound by that 1992 determination in perpetuity (notwithstanding subsequent changes in relevant facts or governing law) or whether, based on current circumstances and the present state of the law, MSD may properly

10

disclaim _future_ financial obligations to Kimberli, based on change in legal residence.

The clerk is directed to administratively close this case, subject to reopening on motion of either party after administrative remedies have been exhausted and settlement efforts prove ineffective.

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

March 4, 1999

cc:  Dean B. Eggert, Esq.
     Jennifer A. Johnson, Esq.
     David L. Harrigan, Esq.
     Jay C. Boynton, Esq.

11